**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOLAR INTEGRATED ROOFING CORP., | Case No.:  23-cv-2323-MMA (AHG) |
| Plaintiff, | **ORDER:** |
| v. | **GRANTING DEFENDANT METTIAS'S MOTION TO DISMISS** |
| DAVID M. MASSEY; LAURA METTIAS; DOES 1 through 10, | [Doc. No. 34] |
| Defendants. | **GRANTING DEFENDANT MASSEY'S MOTION TO DISMISS** |
| | [Doc. No. 36] |

Solar Integrated Roofing Corp. ("SIRC" or "Plaintiff") filed this civil action on December 20, 2023 alleging Defendants David M. Massey and Laura Mettias committed securities violations, fraud, negligence, conversion, unjust enrichment, breach of fiduciary duties, and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.  *See* Doc. No. 1.  On April 30, 2024, default judgment was entered against Defendant Massey because he had failed to respond to the summons issued by the Court on December 21, 2023.  Doc. No. 14.

23-cv-2323-MMA (AHG)

On March 8, 2024, Defendant Mettias filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court granted with leave to amend on May 3, 2024.  *See* Doc. Nos. 8, 8-1, 15.  Defendant Massey then filed a Motion to Set Aside Default Judgment, which the Court granted on June 24, 2024.  *See* Doc Nos. 17, 35.  Plaintiff filed an amended complaint on June 3, 2024, which is the operative pleading in this case.  Doc. No. 26 (First Amended Complaint, the "FAC").

Both Defendants have now filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b).  *See* Doc. Nos. 34, 36.  Plaintiff has filed an Opposition to each motion, and Defendants have filed Replies.  Doc. Nos. 37–38, 40–41.  The Court found the matters suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. Nos. 39, 42.  For the reasons discussed below, the Court **GRANTS** both Defendant Mettias's and Defendant Massey's Motions to Dismiss without prejudice and with leave to amend, except as to Count III which is dismissed with prejudice.

## I. BACKGROUND[1]

Defendant Massey was the Chief Executive Officer and a member of the Board of Directors ("Board" or "the Board") of SIRC.  FAC ¶¶ 2, 18–19.  In February of 2020, SIRC's Board issued Massey 5,000,000 shares of Class B SIRC stock worth $1,500,000.00 as compensation after Massey allegedly told the Board he had not received any compensation for his services for that year.  *Id.* ¶¶ 18–20.  The Board issued Massey another 1,500,000 Class B shares four months later, again for compensation.  *Id.* ¶ 21.  Both of these stock transfers were executed even though Massey had in fact received compensation for his role as CEO.  *Id.* ¶ 23.  In September of 2021, Massey attempted to convince the Board to buy his shares back for $10,000,000.00 but they refused.  *Id.* ¶ 25.

---

[1] Because this matter is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations set forth in the Complaint.  *See Barker v. Riverside Cnty. Office of Edu.*, 584 F.3d 821, 824 (9th Cir. 2009).

23-cv-2323-MMA (AHG)

1

2   The Board later agreed to buy 1,000,000 shares for $2,000,000.00 in lieu of

3   compensation, which Massey had again allegedly already received. *Id.*

4        According to SIRC, Massey created a shell company, SIRC, LLC, in June of 2021

5   as a vehicle to transfer his remaining SIRC stock and improperly profit from the

6   transaction. *Id.* ¶¶ 26–27.  Using SIRC, LLC, Massey allegedly committed several

7   securities violations in his attempt to transfer and sell SIRC stock. *Id.* ¶¶ 35–41.

8   Ultimately, the FBI seized 6,258,96 SIRC shares on August 25, 2023. *Id.* ¶ 41.

9        SIRC also alleges Massey committed various instances of "reckless

10  mismanagement" of SIRC's business, including serious accounting discrepancies, "toxic

11  debts," regulatory noncompliance, a lack of due diligence in hiring and acquisitions,

12  gambling with SIRC funds, using SIRC money for personal expenditures, and lying to

13  investors. *Id.* ¶¶ 42–62.

14       SIRC further contends that Massey and Mettias agreed to prepare and submit false

15  loan applications to the Paycheck Protection Program ("PPP"), which provided Small

16  Business Administration ("SBA") loans to businesses who were affected by the COVID-

17  19 pandemic. *Id.* ¶ 64.  According to SIRC, Massey and Mettias lied about the number of

18  SIRC employees on the applications, thereby securing $6,375,014.00 in PPP loan

19  proceeds. *Id.* ¶¶ 66–67.  Massey then paid Mettias $637,501.70, representing 10% of the

20  loan proceeds and Mettias divided this amount between herself and Massey. *Id.* ¶¶ 66–

21  67.

22       Plaintiff alleges it suffered significant financial and reputational damage as a result

23  of Massey's and Mettias's misconduct and seeks $100,000,000.00 in economic damages

24  and $1,000,000,000.00 in punitive damages. *Id.* at 25.[2]

25

26

27

28  [2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

## II. LEGAL STANDARD

A Rule 12(b)(6)[3] motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998). In determining the propriety of a Rule 12(b)(6) dismissal, generally, a court may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998).

## III. DISCUSSION

Massey first argues the FAC violates Rule 8 because it is a "shotgun" pleading. Doc. No. 36-1 at 8–10. Massey also seeks dismissal of Count I of the FAC because it does not sufficiently allege a violation of the Securities Exchange Act of 1934 (the "Exchange Act"), nor does it satisfy the pleading requirements of the Private Securities

---

[3] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

Litigation Reform Act ("PSLRA"). *Id.* at 10–13. Mettias and Massey seek dismissal of SIRC's fraud claim in Count II, arguing that SIRC fails to satisfy Rule 9(b)'s particularity requirement. *Id.* at 14–17; Doc. No. 34-1 at 8–10. They seek dismissal of the remaining counts for failure to allege sufficient facts under Rule 12(b)(6). Doc. No. 34-1 at 10–20; Doc. No. 36-1 at 17–30. In its Oppositions to the Motions to Dismiss, SIRC argues it has provided sufficient facts to state a claim. Doc. Nos. 37, 40.

## A.   Rule 8

As an initial matter, Massey contends the FAC should be dismissed as a "shotgun" or "puzzle" pleading which violates Rule 8 and the Court agrees. *See* Doc. No. 36-1 at 8–10. "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Securities, LLC*, No. 90-cv-0766-AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). "A 'puzzle pleading' is a complaint that forces the defendants and/or court to sort out the alleged statements and match them with the corresponding alleged facts in order to solve the puzzle of interpreting Plaintiff's claims." *Cheng Jiangchen v. Rentech, Inc.*, No. 17-cv-1490-GW (FFMX), 2017 WL 10363990, at *5 (C.D. Cal. Nov. 20, 2017) (citing *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014)). SIRC has alleged more than 70 paragraphs of factual allegations but has not sufficiently explained how those facts map onto the elements of each of the claims in the FAC; therefore, SIRC has not met the requirements of Rule 8. Nevertheless, for the sake of completeness, the Court will address the plausibility of each of SIRC's claims.

## B.   Count I: Violations of the Securities Exchange Act of 1934

Plaintiff alleges in Count I that Massey violated Section 10(b) of the Exchange Act, as codified at 15 U.S.C. § 78j(b). FAC ¶ 73. That section makes it unlawful for a person to:

> use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules

23-cv-2323-MMA (AHG)

and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

"In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008). "At the pleading stage, a complaint stating claims under section 10(b) . . . must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Act (PSLRA)]." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Rule 9(b) requires that allegations of "fraud or mistake . . . must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). In addition, the allegations "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). In cases involving multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765–66 (9th Cir. 2007); *see also Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (where an action involves multiple defendants, a plaintiff "must provide each and every defendant with enough information to enable them to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.") (citations omitted). Further, "[a]ll securities fraud complaints since 1995 . . . are subject to the more exacting pleading requirements of the PSLRA," which requires a

plaintiff to "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d at 991.  "[W]hen "determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences" *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007)).

### 1.   Material Misrepresentation

The PSLRA requires a plaintiff to "'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed.'" *Id.* at 990–91 (quoting *Gomper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) and 15 U.S.C. § 78u–4(b)(1)).  In the FAC's 70 paragraphs of facts, there are six allegations that are or could be construed as a misleading statement or misrepresentation: (1) Massey "represented" to the Board he was not compensated for his role as CEO of SIRC in 2020, FAC ¶ 18; (2) Massey told an investor in March of 2023 that SIRC's share price would reach $0.20 in the next 30 days, *id.* ¶ 54; (3) Massey told a journalist in February of 2023 that he had secured funding for SIRC, *id.* ¶ 56; (4) Massey submitted false PPP loan applications, *id.* ¶ 67; (5) Massey told a shareholder that "My counsel told me not to speak to shareholders anymore," *id.* ¶ 60; and (6) Massey told a shareholder that "I've been advised I cannot communicate with shareholders anymore so I cannot take your calls for McCanna's [sic] affective [sic] for 10 as effective I cannot talk to you," *id.*  Massey contends SIRC has not adequately identified specific statements made by Massey and why they are misleading.  Doc. No. 36-1 at 10–12.  The Court agrees.

#### a.   Representation to the Board About Compensation

SIRC bases its claim that Massey lied to the Board about his 2020 compensation on Exhibits 1–3.  *See* FAC ¶¶ 17–21.  Exhibit 1 is a W-2 Wage and Tax Statement for David Massey which reflects that Workforce Business Services paid him $92,077.00 for the 2020 tax year.  *See* FAC at pp. 28.  SIRC asserts Workforce Business Services is the

payroll company for SIRC.  *Id.* at pp. 5 fn.1.  Exhibit 2 is a document, signed in February of 2020, entitled "Written Consent of the Board of Directors of Solar Integrated Roofing Corporation," which contains the statements "David Massey has been serving as the Company's CEO and President since 2015 and Robert N. Jones has been serving as Company's CFO since January 2019."  *Id.* at 30.  Exhibit 2 next states that "Mr. Massey and Mr. Jones have not received compensation for their services," and that the Board wishes to issue five million shares of preferred stock to Massey and three million shares of preferred stock to Jones.  *Id.* at 30.  Exhibit 3 is another document, dated June of 2020, entitled "Written Consent of the Board of Directors of Solar Integrated Roofing Corporation," stating that the Board "wishes to issue 1,500,000 shares of Series B preferred stock to David Massey for his services as CEO of the Company."  *Id.* at 32.

Although SIRC states Massey "represented" to the Board that he was not compensated for his 2020 work as CEO, it does not plead Massey made any specific statement about his compensation, and Exhibits 2 and 3 do not identify Massey as the speaker or source of the Board's statements that he had not received compensation for his role as CEO.  FAC ¶¶ 17–21, 30–32.  Further, SIRC provides no detail about the facts and circumstances surrounding when Massey made any statement or to whom he made any statement about his compensation.  FAC ¶¶ 17–21.  At bottom, the PSLRA requires a plaintiff to "specify each statement alleged to have been misleading," *Zucco Partners, LLC*, 552 F.3d at 990–91, and SIRC identifies no statement made by Massey with respect to his compensation.  Accordingly, SIRC has not adequately pleaded its securities fraud claim based on Massey's representation to the Board about compensation.

     b. <u>Statements to Investors and a Journalist</u>

As noted above, SIRC pleads several statements that Massey made to investors and a journalist.  SIRC vaguely alleges that the funding statement to the journalist was false. FAC ¶ 56.  Apart from that allegation, SIRC does not plead Massey's statements to investors regarding SIRC's share price or his statements telling investors that he could no longer communicate with them on advice of counsel were false.  Nor does SIRC allege

how any of these statements were misleading.  Absent more information as to how these statements were false or misleading, SIRC's claim does not comply with the PSLRA.

### c.  PPP Loan Applications

Assuming Massey's verification of the PPP loan applications were statements, SIRC has plausibly alleged they were false because they contained inflated employees numbers.  *See* FAC ¶ 67.  However, SIRC has not plausibly alleged any connection between the false PPP loan applications and the purchase or sale of a security.  *See Stoneridge Inv. Partners, LLC*, 552 U.S. at 15.  Consequently, SIRC does not adequately plead his securities fraud claim based upon the PPP loan applications.

### 2.  *Scienter*

"The required state of mind under the PSLRA is a 'mental state embracing intent to deceive, manipulate, or defraud,'" and in the Ninth Circuit, it includes recklessness. *See Stoneridge Inv. Partners, LLC*, 552 U.S. at 157; *Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1042 (N.D. Cal. March 11, 2020) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193–94 n.12 (1976).  To satisfy the scienter requirement of the PSLRA, SIRC must plausibly allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" when he made each statement.  *Id.* at 991 (quoting 15 U.S.C. § 78u–4(b)(2)).

Assuming SIRC adequately pleads a false or misleading statement, the Court finds that SIRC has alleged sufficient facts to show that Massey intended to "deceive, manipulate, or defraud" when he lied to the Board about his 2020 compensation.  FAC ¶¶ 20–23.  It has also adequately alleged Massey's scienter with respect to the PPP loan fraud.  FAC ¶ 67.  But SIRC has not supported Massey's alleged scienter with respect to his statements to investors and the journalist.  To be sure, there is no information in the FAC explaining whether or how Massey knew those statements were false or even if those statement were in fact false.  SIRC also pleads no facts regarding whether he intended to deceive these listeners.

### 3.    Causation

Further, assuming SIRC adequately identifies a material misrepresentation and plausibly alleges that Massey possessed the requisite scienter when he made them, the Court finds that SIRC fails to plead loss causation.  In order to sufficiently plead a claim under Section 10(b) of the Exchange Act, a plaintiff must plausibly allege "a causal connection between the material misrepresentation and the loss' experienced by the plaintiff . . . ."  *Inchen Huang*, 443 F. Supp. 3d at 1043 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (internal quotation marks omitted)).  Under Ninth Circuit law, a plaintiff must plead "loss causation" with the particularity required by Rule 9(b).  *Id.*  (citing *Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, 774 F.3d 598, 605 (9th Cir. 2014)).  Plaintiff states that Massey's conduct "directly and proximately caused SIRC's damages," but does not allege specific facts which show a causal connection between either Massey's allegedly false statements about his compensation to the Board or his allegedly illegal and "off-the-books" securities transactions and the damages it seeks beyond this conclusory statement.  *Id.* ¶¶ 72–24.  This is insufficient to satisfy Rule 9(b).

For all of these reasons, Plaintiff has not provided sufficient, plausible, and specific allegations to state a claim for securities fraud under the PSLRA.  The Court therefore **GRANTS** Massey's Motion to Dismiss as to Count I **without prejudice**.

### C.    Count II: Common Law Fraud

In Count II, SIRC alleges Massey engaged in common law fraud when he "made false representations of material fact and knowingly concealed material information from SIRC's Board, siphoned funds for personal expenditures, and engaged in other wrongful conduct outlined herein," and that Massey and Mettias committed common law fraud by lying on applications for loans under the PPP program and taking the proceeds from the loans for their personal use.  FAC ¶75–78.  Both Massey and Mettias contend SIRC's Amended Complaint does not provide the specificity of pleading required by Rule 9(b).  *See* Doc. Nos. 34-1, 36-1.

As this Court noted in its May 3, 2024 dismissal order, "due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal." *Romero v. Flowers Bakeries*, LLC, No. 14-CV-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016); *see also Moore v. EO Products, LLC*, No. 22-cv-7618-JST, 2023 WL 6391480, at *09 (N.D. Cal. Sept. 23, 2023).  Assuming that California law, applies, however "The elements of a cause of action for fraud in California are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (1997) (internal quotation marks omitted).

As noted above, Rule 9(b) requires that allegations of "fraud or mistake . . . must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity.  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  In addition, the allegations "must set forth what is false or misleading about a statement, and why it is false."  *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).  However, "intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672.  In cases involving multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *Swartz v. KPMG LLP*, 476 F.3d 756, 765–66 (9th Cir. 2007); *see also Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (where an action involves multiple defendants, a plaintiff "must provide each and every defendant with enough information to enable them to know what

misrepresentations are attributable to them and what fraudulent conduct they are charged with.") (citations omitted).

### 1.    Lying to the Board about Compensation

SIRC alleges Massey "made false representations of material fact and knowingly concealed material information when he lied to SIRC's Board, siphoned funds for personal expenditures, and engaged in other wrongful conduct."  FAC at ¶¶ 76–78.  But SIRC has not explained what or when Massey told the Board about his compensation. SIRC has also not explained with sufficient specificity what funds Massey siphoned, when or how he did so, nor any specifics about the "other wrongful conduct" it alleges Massey engaged in.  SIRC has also not plausibly alleged any facts regarding how fraudulent statements by Massey to the Board about his compensation caused its damages.  *See Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996) (stating that damage causation "must be pled specifically; general and conclusory allegations do not suffice").

### 2.    PPP Loan Fraud

SIRC alleges Massey and Mettias "submitted PPP loan applications for each of SIRC's subsidiaries . . . [which] falsely represented that SIRC had 532 employees."  FAC ¶¶ 13–10, 67.  SIRC then received $6,375,014.00 in PPP loans and Massey paid Mettias $637,501.70 from the loan proceeds.  *Id*.  SIRC alleges Mettias divided this money between herself and Massey.  *Id*. ¶¶ 3–20.  SIRC claims Massey and Mettias concealed their PPP loan activities from SIRC.  *Id*. ¶¶ 11–12, 22–24.  A fraud claim based on concealment requires a plaintiff to plausibly allege:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage."

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (Cal.

Ct. App. 2018) (quoting *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612–613 (Cal. Ct. App. 1992)).

SIRC has not plausibly alleged with sufficient specificity the "what, when, and how" of the alleged PPP loan fraud.  It has not identified the amount sought on each loan application, when each PPP loan application was submitted and on behalf of what entity, what fraudulent information regarding the number of employees each application contained, how the amount of the loans SIRC received differed from what SIRC and its subsidiaries were entitled to had there been no fraud, the amount of each of the loans the subsidiaries actually received, or how much money Massey received from the loan funds. While Plaintiff states it expects to gain this information in discovery, "the Supreme Court has been clear that discovery cannot cure a facially insufficient pleading." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1172, 1177 (9th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678–79).  "Our case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery." *Id*. (citing *Twombly*, 550 U.S. at 559).

Further, SIRC has not alleged Mettias had a duty to disclose material facts to SIRC.  *See Blickman Turkus, LP, LLC*, 162 Cal. App. 4th at 868.  Nor has SIRC plausibly alleged either Massey or Mettias intended to defraud SIRC, as opposed to the SBA and/or the PPP loan program, because based upon its own pleading, SIRC was not entitled to the $6,375,014.00 in PPP loan money in the first place.  SIRC refers to Exhibit 40 as support for the allegations in Count II, which is a portion of an email exchange in which Mettias states she is sending "bills for my personal property" to Massey, and Massey asks for "the payoff for the lease," which Mettias promises to provide.  FAC ¶¶ 65–66; *id.* at 251–52.  But this Exhibit provides no details as to whether, how, or when any PPP loan proceeds were used to pay Mettias's "bills for her personal property" or a lease.  SIRC also refers to Exhibit 41 as support for Count II, which is a portion of an email exchange from Curiel reminding Massey that Massey told him Mettias said SIRC had 532 employees, which contradicted SIRC's Human Resource's statement that SIRC had 203

employees in 2022. FAC ¶¶ 65–66, pp. 254–57. This email also does not provide any details of the PPP loan fraud alleged, such as when Mettias reported a false number of employees on PPP loan applications and on behalf of what entity the applications were submitted.

Further, SIRC has not plausibly alleged how, specifically, the fraud caused its damages. *See Blickman Turkus, LP*, 162 Cal. App. 4th at 868. Plaintiff claims "the concrete loss to SIRC was $637,501.70." FAC ¶¶ 12–13, 67. But this is simply the amount paid to Mettias for her work submitted the PPP loan applications. SIRC has not explained how this number reflects the actual damages it claims it suffered as a result of the fraud, nor has it explained how those damages – which it vaguely identifies as "ongoing SBA audits related to the PPP loan funds" and negative effects on its business – were caused by Massey's and Mettias's actions.

Accordingly, the Court **GRANTS** Massey's and Mettias's Motions to Dismiss as to Count II **without prejudice**.

**D.   Count III: Wire Fraud**

SIRC alleges in Count III that Massey committed wire fraud in violation of 18 U.S.C. § 1343. FAC ¶¶ 79–81. Although SIRC is correct that wire fraud is one of the predicate acts alleged under Count VI, *see* FAC ¶¶ 90–93, 18 U.S.C. § 1343 is a criminal statute that does not provide for a private, civil cause of action. *See Tillman v. Los Angeles County District Attorney's Office*, No. 22-cv-5755-SSS (MAA), 2022 WL 19829379, at *2 (C.D. Cal. Sept. 21, 2022) (stating there is no private cause of action for wire fraud under 18 U.S.C. § 1343); *Riley v. Quality Loan Serv. Corp.*, No. 18-cv-1297-WQH (AGS), 2019 WL 157838, at *2 (S.D. Cal. Jan 10, 2019) (concluding that 18 U.S.C. § 1343 does not provide a private right of action); *Chen v. T.T. Group*, No. 14-cv-0138-DOC (DFMx), 2014 WL 12613519, at *1 (C.D. Cal. May 29, 2014) ("18 U.S.C. §§ 1341 and 1343 are criminal wire fraud statutes. They do not create civil causes of action . . . ."). Accordingly, the Court **GRANTS** Massey's Motion to Dismiss as to Count III **with prejudice**.

**E.      Count IV: Negligence**

In Count IV, SIRC brings a negligence claim against Massey.  FAC ¶¶ 82–84.
Massey asks the Court to dismiss Count IV because SIRC has failed to identify the
applicable state law and because the Amended Complaint is too vague and conclusory to
provide notice of the allegations against him.  Doc. No. 36-1 at 27–28.

As noted above, a plaintiff must specify which state law governs a common law
claim.  *See Romero*, 2016 WL 469370, at *12; *Moore*, 2023 WL 6391480, at *9.
Assuming that California law, applies, however, "[t]o establish liability for negligence
under [California] law, a plaintiff must prove duty, breach, causation, and damages."
*Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1006 (C.D. Cal. 2022) (citing *Conroy v.
Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1250 (2009).)  In California, "the required
element of legal causation has two components: 'cause in fact and proximate cause.'"
*Steinle v. United States*, 17 F.4th 819, 823 (9th Cir. 2021) (quoting *S. Coast Framing,
Inc. v. Workers' Comp. Appeals Bd.*, 61 Cal. 4th 291, 198 (2015).)

> To determine causation in fact, California has adopted the substantial factor
> test set forth in the Restatement Second of Torts, Section 431.  "An event will
> be considered a substantial factor in bringing about harm if it is recognizable
> as having an appreciable effect in bringing it about." *Kumaraperu v. Feldsted*,
> 237 Cal. App. 4th 60, 68, 187 Cal. Rptr. 3d 583 (2015) (internal citations and
> quotation marks omitted).  An "actor's negligent conduct is not a substantial
> factor in bringing about harm to another if the harm would have been
> sustained even if the actor had not been negligent."  *Mills v. U.S. Bank*, 166
> Cal. App. 4th 871, 899, 83 Cal.Rptr.3d 146 (2008) (internal citations and
> quotation marks omitted) (emphasis removed) (citing *Viner v. Sweet*, 30 Cal.
> 4th 1232, 1240, 135 Cal. Rptr. 2d 629, 70 P.3d 1046 (2003)).

*Bhatia v. Silvergate Bank*, ___ F. Supp. 3d ___, 2024 WL 1199679, at *23 (S.D. Cal. March
20, 2024).

SIRC has not adequately identified what duty Massey had to SIRC; it simply
asserts Massey had a "tort duty to SIRC."  FAC ¶ 83.  With respect to causation, SIRC
states in support of Count IV that Massey's "material breaches [of] his tort duties directly
and proximately caused SIRC's damages." *Id.*  This is simply a restatement of the law.

SIRC has not provided sufficient facts to plausibly allege how Massey's breach of his duties had "an appreciable effect in bringing . . . about" the $100,000,000.00 in damages it alleges it suffered. *Bhatia*, 2024 WL 1199679, at *23. As it stands, the Amended Complaint simply restates the element of causation and as such is not sufficient to plausibly allege any breach of duty by Massey caused the economic damages SIRC claims it suffered. Accordingly, the Court **GRANTS** Massey's Motion to Dismiss as to Count IV **without prejudice**.

## F.     Count V: Conversion

In Count V, SIRC alleges that Massey and Mettias "exercised unauthorized control over SIRC's assets" and "divert[ed] PPP loan proceeds to personal use in collaboration with Mr. Massey." FAC ¶¶ 85–89. In California, "[t]he elements of a claim for conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion, (2) the defendant's conversion by a wrongful act or disposition of property rights, and (3) damages." *Miller v. Bank of America, N.A.*, No. 1:21-cv-00337-JLT, 2022 WL 3704093, at *4 (E.D. Cal. Aug. 26, 2022) (citing *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1135 (Cal. Ct. App. 2014)). Money can only be the subject of a conversion claim if "a specific, identifiable sum is involved." *Ortega v. Toyota Motor Sales, USA, Inc.*, 572 F. Supp. 2d 1218, 1220 (S.D. Cal. 2008) (citing *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (Cal. Ct. App. 1997)).

SIRC claims Massey converted its assets by "(a) selling restricted shares obtained through deceit, (b) misappropriating company funds for personal use, . . . and (d) engaging in illegal off-the-books transactions with shares of SIRC stock through the shell company 'SIRC, LLC.'" FAC ¶ 86. With respect to these allegations, SIRC does not identify a specific, identifiable sum that Massey is alleged to have converted through his sale of SIRC stock or a specific amount of money that Massey misappropriated from SIRC.

23-cv-2323-MMA (AHG)

SIRC also alleges Massey and Mettias converted SIRC's assets to their own use by diverting PPP loan proceeds for personal gain. *Id.* ¶ 87. Given SIRC's contention that the PPP loans they received were fraudulently obtained, it does not appear SIRC has plausibly alleged they owned or had a right to own the PPP funds. *See Miller*, 2022 WL 3704093, at *4; *Prakashpalan*, 223 Cal. App. 4th at 1135. With respect to Massey, SIRC has not identified a specific sum of money Massey allegedly received from the PPP loan proceeds, and explicitly acknowledges that "[t]he exact amounts of [the PPP loan proceeds] shared with Mr. Massey are unknown to SIRC at this time . . . ." FAC ¶ 67. As to Mettias, SIRC alleges she received a total of $637,501.70, her agreed-upon fee for submitting the allegedly fraudulent loans. *Id.* According to SIRC, the normal and customary fee for Mettias's services would have been $50,000. *Id.* But SIRC's Amended Complaint simply lists the amounts Mettias was paid by each of SIRC's subsidiaries and does not sufficiently allege that the $637,501.70 came from PPP loan proceeds or that Mettias gained that amount by a wrongful act rather than as simply payment for her services.

Accordingly, the Court **GRANTS** Massey's and Mettias's Motions to Dismiss as to Count V **without prejudice**.

## G.    Count VI: RICO Violations

SIRC alleges in Count VI that Mettias and Massey engaged in racketeering activity, in violation of 18 U.S.C. § 1961, *et seq.*, the federal civil RICO Act. FAC ¶¶ 90–93. A private individual may bring a RICO action pursuant to 18 U.S.C. § 1964(c) if they have been "injured in [their] business or property by reason of a violation of § 1962." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). To state a RICO claim under § 1962, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima*, 473 U.S. at 496. A plaintiff must also allege the RICO activity caused injury to his business or property. *Living Designs, Inc. v. E.I Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.)

SIRC alleges that Massey "through his position in SIRC, operated as part of an enterprise and engaged in a pattern of racketeering activity," which it identifies as "multiple acts of securities fraud in violation of 15 U.S.C. § 78j(b) and wire fraud in violation of 18 U.S.C. § 1343."  FAC ¶ 91.  SIRC also alleges that together, Mettias and Massey "executed a fraudulent scheme involving the misappropriation of PPP funds," and "made false representations to the Board and PPP lenders" by "submitting deceptive applications for PPP funds, which were then diverted for personal expenditures rather than for the legitimate business purposes of SIRC."  *Id.* ¶ 92.  According to SIRC, this activity also included wire fraud, in violation of 18 U.S.C. § 1343, as well as "potentially other federal statutes."  *Id.*  The Court concludes SIRC has not plausibly alleged all elements of a RICO claim.

### 1.   The Enterprise

The Supreme Court has held the term "conduct" encompasses an element of direction.  "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  "Simply being 'a part' of the enterprise or 'performing services' for the enterprise does not rise to the level of direction required to satisfy this element."  *LD v. United Behavioral Health*, 508 F. Supp. 3d 583, 602 (N.D. Cal. Dec. 18, 2020) (citing *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)).  The RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  "[T]o establish liability under section 1962(c), one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).

SIRC's allegations do not sufficiently define the alleged "enterprise."  SIRC alleges that Massey, "through his position in SIRC, operated as part of an enterprise" by "misleading the Board to trigger stock issuances, illegal securities transactions, selling

restricted shares in off-the-books transactions, and making false and deceptive statements and practices." FAC ¶ 91. These allegations appear to suggest that SIRC itself is the enterprise. *See Moran v. Bromma*, 675 Fed. App'x 641, 645 (9th Cir. 2017) (stating that "a corporate officer is sufficiently distinct from the corporation for which he works such that a plaintiff can allege the officer as the RICO person and the corporation as the RICO enterprise"). But SIRC also alleges Massey and Mettias agreed to participate together in a "fraudulent scheme" to submit false PPP loan applications which inflated the number of SIRC's employees; they would then retain 10% of the fraudulently obtained loan proceeds for themselves. *Id*. ¶ 67. The RICO statute defines "enterprise" to include "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has interpreted this language to mean that "RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. U.S.*, 556 U.S. 938, 948 (2009) (quoting *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)). The allegations regarding the PPP loan fraud appear to suggest that the enterprise is an association between Massey and Mettias. Without further clarity, the Court finds that SIRC has not plausibly alleged or defined the required "enterprise."

### 2. Pattern of Racketeering Activity

To establish a "pattern," a plaintiff must show "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). "Racketeering activity" is defined in 18 U.S.C. § 1961(1), which lists dozens of criminal acts. "A 'pattern' of racketeering activity also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "Predicate acts are related if they have 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Metaxas v. Lee*, 503 F. Supp. 3d 923, 941 (N.D. Cal. Nov. 30, 2020) (quoting *H.J. Inc.*, 492 U.S. at 240)). "Continuity has been interpreted as encompassing 'both a closed- and open-ended concept . . . .'" *Id.*

(quoting *H.J. Inc.*, 492 U.S. at 241).  "Closed-ended continuity entails 'a series of related predicates extending over a substantial period of time," i.e., more than "a few weeks or months," while "[o]pen-ended continuity involves 'past conduct that by its nature projects into the future with a threat of repetition.'"  *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241).

SIRC alleges Massey engaged in a "pattern of racketeering" by engaging in wire fraud and securities fraud, more specifically misleading the Board to trigger stock issuances, "illegal securities transactions, selling restricted shares in off-the-books transactions."  FAC ¶ 91.  Although wire fraud is a predicate offense under the RICO statute, the PSLRA amended the statute to state that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]."  18 U.S.C. §§ 1961(1), 1964(c); *Rezner v. Bayerishce Hypo-Und Vereinsbank AG*, 630 F.3d 866, 871 (9th Cir. 2010).  Accordingly, securities fraud cannot be relied upon as a predicate act.

SIRC also alleges Massey "[made] false and deceptive statements."  FAC ¶ 91.  Assuming this refers to SIRC's allegation that Massey lied to the Board about his compensation, as discussed above, SIRC has not plausibly alleged that Massey falsely told the Board he was not compensated for his role as CEO in 2020.  SIRC has also not sufficiently explained how Massey's and Mettias's actions, other than the alleged wire fraud, fall under the enumerated RICO offenses in 18 U.S.C. § 1361.  SIRC's allegations against Massey's and Mettias's participation in the PPP loan fraud are also not sufficient to plausibly allege a racketeering activity.  Where fraud is alleged as the predicate acts to a RICO claim, the allegations must satisfy Rule 9(b)'s specificity requirement.  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).  As discussed above, SIRC's fraud allegations are insufficient to satisfy Rule 9(b).

### 3.   Causation

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate

cause as well." *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Securities Investor Protector Corp.*, 503 U.S. 258, 268 (1992)). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Supply Corp.*, 547 U.S. 451, 461 (2006). A plaintiff must show a "direct relation between the injury asserted and the injurious conduct alleged." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharmaceuticals Co. Ltd.*, 943 F.3d 1243, 1249 (9th Cir. 2019) (quoting *Holmes*, 503 U.S. at 269–70)). Although SIRC alleges damages in the amount of $100,000,000.00, it does not plausibly allege a direct relationship between Massey's and Mettias's racketeering activity and the damages it claims it suffered or how that activity proximately caused the damages.

For these reasons, the Court **GRANTS** Massey's and Mettias's motion to dismiss Count VI **without prejudice**.

## H.    Count VII: Unjust Enrichment

"There is no cause of action in California labeled 'unjust enrichment.'" *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477 (Cal. Ct. App. 2022); *see also Sepanossian v. National Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 206–07 (Cal. Ct. App. 2023) (stating that "an unjust enrichment claim is grounded in equitable principles of restitution"); *Helems v. Game Time Supplements, LLC*, No. 22-cv-1122-L (AHG), 2023 WL 5986130, at *6 (stating that "there is no unjust enrichment cause of action in California, instead there is only a claim for restitution"). Rather, "[u]njust enrichment is synonymous with restitution. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (Cal. Ct. App. 2010). In California, "[r]estitution is a quasi-contract theory, which allows for 'the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received [citation] where the benefit to the defendant was conferred through fraud, duress, conversion, or similar conduct." *Echo & Rig Sacramento, LLC v. AmGuard Insurance Co.*, 698 F. Supp. 3d 1210, 1218 (E.D. Cal. Oct. 18, 2023).

SIRC alleges Massey unjustly enriched himself at SIRC's expense by manipulating SIRC's stock, engaging in unauthorized securities transactions, including off-the-books securities transactions, and siphoning off SIRC's assets for personal use.  FAC ¶¶ 94–97.  SIRC has not explained how Massey manipulated SIRC's stock or how he benefitted from that manipulation.  SIRC claims Massey created a shell corporation, SIRC, LLC, to convert his shares into cash.  *Id.* ¶¶ 26–40.  But it is not clear from the Amended Complaint whether Massey actually succeeded in accomplishing this before the FBI seized 6,258,986 shares of SIRC stock.  *Id.*  Nor is it clear to the Court what SIRC is referring to when it alleges that Massey "siphoned SIRC's assets."  *Id.* ¶ 96.

SIRC also alleges Massey and Mettias were unjustly enriched by the $637,501.70 they allegedly received from the fraudulent PPP loan funds.  But SIRC also alleges those funds came from the United States government via the SBA and the PPP loan program, not SIRC.  *See Quiby Inc. v. Posey*, No. 17-cv-3847-EMC, 2018 WL 732493, at *4 (N.D. Cal. Feb. 6, 2018) (stating that a plaintiff fails to state a claim when asserting a claim for unjust enrichment where the defendant was enriched with money provided to it by someone other than the plaintiff).  Following SIRC's logic, if SIRC was not entitled to the entire $6,375,034.00 because it was obtained via inflated employee numbers, it was also not entitled to all of the $637,501.70 it claims Massey and Mettias took from those funds.  Accordingly, SIRC has not plausibly alleged it is entitled to any restitution with respect to the alleged PPP loan fraud.  The Court therefore **GRANTS** Massey's and Mettias's Motions to Dismiss as to Count VII **without prejudice**.

## I. Count VIII: Breach of Fiduciary Duty

SIRC contends Massey breached his fiduciary duty as CEO of SIRC by "manipulating SIRC's stock, engaging in unauthorized securities transactions, selling restricted shares in of-the-books transactions, making ludicrous business decisions that no reasonable similarly situated CEO would have made, misappropriating company and PPP funds for personal use, committing wire fraud and otherwise violating federal and state law."  FAC ¶¶ 98–101.  SIRC also claims Massey made decisions and took actions that

were not in the best interests of SIRC, and his business decisions and fraudulent practices "harmed SIRC financially [and] also exposed the company to significant legal and reputational risks." *Id.* Massey argues the allegations in Count VIII are too vague and conclusory to state a claim. Doc. No. 36-1 at 27–29.

"The elements of a claim for breach of fiduciary duty [in California] are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach." *O'Neal v. Stanislaus Cnty. Emps.' Ret. Ass'n*, 8 Cal. App. 5th 1184, 1215 (Cal. Ct. App. 2017) (internal quotation marks omitted). SIRC plausibly alleges Massey was a director of SIRC, *see* FAC ¶ 19, and "in California, it is beyond dispute that corporate directors owe a fiduciary duty to the corporation and its shareholders . . ." which requires them to "serve 'in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders.'" *Berg & Berg Enterprises, LLC v. Boyle*, 179 Cal. App. 4th 1020, 1037 (Cal. Ct. App. 2009) (citing Cal. Corp. Code § 309(a)). SIRC also plausibly alleges Massey breached this duty by, among other things, making a financially unsound $4.2 million loan to Arbiter Capital, LLC in exchange for a future loan to SIRC of $42 million which never materialized, took out a loan on behalf of SIRC which had an 88.5% interest rate, entered into a securities transaction with an unlicensed securities dealer who converted SIRC stock at $0.05 when the stock was trading at $0.50, purchased a 60% interest in SunUp Solar LLC despite the fact that it did not have any tangible assets and which resulted in millions of dollars of damages to SIRC, and engaged in insider trading by providing SIRC's confidential documents to selected investors and a financial journalist. FAC ¶¶ 46–62.

As to causation, however, SIRC falls short because it has not plausibly alleged Massey's conduct "'was a substantial factor in bringing about the harm to the plaintiff.'" *Pacific Select Fund v. Bank of New York Mellon*, No. 2012 WL 12886483, at *6 (C.D. Cal. Jan. 30, 2012) (quoting *Servs. Emps. Int'l Union, Local 250 v. Colcord*, 160 Cal. App. 4th 362, 375 (Cal. Ct. App. 2008)). While SIRC alleges its damages are estimated at $100,000,000 and it was "once valued at $100 million with a share price regularly

above $0.30 [and it] now teeters on the brink of insolvency," it does not sufficiently connect Massey's actions with its current financial condition.  SIRC provides insufficient facts regarding how it would have fared in the absence of Massey's actions or how, specifically, Massey's actions damaged SIRC.  Accordingly, the Court **GRANTS** Massey's Motion to Dismiss as to Count VIII **without prejudice**.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Massey's and Mettias's Motions to Dismiss and **DISMISSES** all claims.  The dismissal is **without prejudice** as to all claims except Count III.  Because amendment would be futile, dismissal of Count III is **with prejudice**.

Any amended complaint will be the operative pleading and shall be filed no later than **October 9, 2024.**  Defendant must respond within the time prescribed by Federal Rule of Civil Procedure 15.[4]  Any claim not re-alleged and any Defendant not named in the second amended complaint will be considered waived.  *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty*., 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated:  September 11, 2024

HON. MICHAEL M. ANELLO
United States District Judge

---

[4] In addition, the Court notes that any amended pleading must be accompanied by a version of that pleading that shows—through redlining or similar method—how that pleading differs from the previously dismissed pleading.  *See* CivLR 15.1.c.